**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SLOAN VALVE COMPANY,**<br><br>Plaintiff,<br><br>vs.<br><br>**FLEX PANTHER**<br>24559 VIA LAS LADERAS<br>MURRIETA, CA 92562<br><br>AND<br><br>**BRYCE WHITE**<br>24559 VIA LAS LADERAS<br>MURRIETA, CA 92562<br><br>AND<br><br>**JANE DOE**<br>TRUE NAME UNKNOWN<br>ADDRESS UNKNOWN<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.<br><br>Judge<br><br>Magistrate |

---

**COMPLAINT**

---

Plaintiff Sloan Valve Company and its affiliates ("***Plaintiff***" or "***Sloan***"), by and through counsel, for its Complaint against Flex Panther, Bryce White ("***White***"), and Jane Doe ("***Jane Doe***") (collectively, the "***Defendants***") states as follows:

**INTRODUCTION**

1. Defendants are engaged in the unauthorized distribution and sale of materially different versions of Plaintiff's products bearing Plaintiff's brand and using

Plaintiff's intellectual property on Amazon.com, Inc.'s United States-based ecommerce platform, Amazon.com (the "***Amazon Marketplace***"), as well as potentially other ecommerce sites and throughout the Internet.

2. Defendants are also using Plaintiff's trademarks—without Plaintiff's authorization—to advertise, promote, and sell the products on the Amazon Marketplace.

3. As a result of Defendants' unauthorized sales and unauthorized use of Plaintiff's trademarks, Defendants are confusing and misleading consumers, interfering with Plaintiff's relationships with its authorized dealers, and violating Plaintiff's rights in its proprietary intellectual property.

4. Defendants' unauthorized sales and infringing activities are unlawful and have harmed, and will continue to harm, Plaintiff.

## PARTIES

5. Sloan is a corporation formed and existing under the laws of the State of Delaware with a principal place of business in Franklin Park, Illinois.

6. Sloan manufactures, distributes, and sells a variety of proprietary plumbing parts, fixtures, accessories, and other related products (collectively, the "***Products***").

7. Defendant Flex Panther is a corporation and successor by conversion to Flex Panther LLC organized and operating under the laws of the State of California, believed to be headquartered at 24559 Via Las Laderas, Murrieta, CA 92562.

8. On the Amazon Marketplace, Flex Panther operates a storefront through which it sells the Products, purporting to be located at 24559 Via Las Laderas, Murrieta, CA 92562 and can be found on the Amazon Marketplace at https://www.amazon.com/s?i=merchant-items&me=AKHES2F39YR37 (the "***Flex Panther Storefront***").

9. Defendant Bryce White is an individual who resides at 24559 Via Las Laderas, Murrieta, CA 92562 and owns and operates the Flex Panther Storefront.

10. Upon information and belief, White is the owner and/or managing member of Flex Panther, and uses Flex Panther as his alter ego, such that Flex Panther fails to observe corporate formalities, fails to maintain an arms-length relationship among related persons, and is a mere facade for the operation of its dominant owner, Defendant White.

11. Upon information and belief, Jane Doe is one or more individuals or entities engaged or assisting in the unauthorized sale of the Products and violation of Sloan's valuable rights in its intellectual property in connection with Flex Panther and White. The precise identity, location, and capacity of Jane Doe is currently unknown to Plaintiff. Plaintiff intends to amend this Complaint and/or serve Jane Doe when his, her, it, or their true identity, capacity, and location is discovered.

12. Defendants sold and continue to sell the Products and use Plaintiff's proprietary intellectual property in connection with such sales without the authority or

consent of Plaintiff and despite Plaintiff's requests that Defendants cease their unlawful conduct.

13. Plaintiff has not authorized Defendants to sell the Products or otherwise use Plaintiff's valuable intellectual property.

## JURISDICTION AND VENUE

14. This Court has original subject matter jurisdiction over Plaintiff's trademark claims pursuant to 28 U.S.C. § 1338(a).

15. This Court also has original subject matter jurisdiction over Plaintiff's unfair competition claims pursuant to 28 U.S.C. § 1338(b) because they are joined with Plaintiff's substantial and related trademark claims.

16. Pursuant to 28 U.S.C. § 1367, the Court has supplemental subject matter jurisdiction over Plaintiff's remaining claims because they form part of the same case or controversy as Plaintiff's trademark and unfair competition claims.

17. Pursuant to Fed. R. Civ. P. 4(k)(1)(A) and 735 ILCS 5/2-209, this Court has personal jurisdiction over Defendants because Defendants have, among other things: (i) transacted business in Illinois; (ii) contracted to supply goods in Illinois; (iii) caused tortious injury in Illinois by acts committed in Illinois; (iv) caused tortious injury in Illinois by acts committed outside of Illinois while regularly engaging in business and deriving substantial revenue from goods consumed in Illinois; (v) caused tortious injury in Illinois by acts committed outside of Illinois with knowledge that Plaintiff would be

harmed within the State of Illinois; and/or (vi) caused injury to an Illinois resident, Sloan, by damaging its goodwill and reputation and violating Sloan's rights in its trademarks.

18. Defendants purposefully avail themselves to the benefits and protections of Illinois and Illinois law by, *inter alia*, knowingly purchasing from Illinois resellers and selling and shipping goods to Illinois consumers; utilizing Amazon's warehouses located in Illinois; and utilizing Illinois infrastructure, such as Illinois roadways, airports, and/or railroads.

19. Defendants knowingly advertise to the consuming public located in this forum, sell products into this forum, and purposefully harm Plaintiff's reputation and goodwill within the jurisdiction of this forum, where Defendants are aware that Plaintiff is located.

20. Defendants' activities are significant, and Defendants have made substantial and regular advertisements, marketing, shipments, distributions, and sales of products to customers located within this forum's jurisdiction.

21. Plaintiff's claims arise directly from Defendants' conduct and related activities within this forum, including their infringing marketing, sales, and shipments into this forum, which are directly related and relevant to Plaintiff's causes of action.

22. The Court's exercise of personal jurisdiction over Defendants is fair and reasonable because Defendants have demonstrated an intent to avail themselves of the benefits and protections of the laws that govern this forum through the nature, regularity,

and relevance of Defendants' contacts with this forum.

23. As such, personal jurisdiction is reasonable and consistent with due process.

24. Venue is proper pursuant to at least 28 U.S.C. § 1391(b)(2) because a significant portion of the events giving rise to Plaintiff's claims, including Defendants' infringing sales and harm to Plaintiff's reputation and goodwill, occurred in this District.

## BACKGROUND

### *Plaintiff's Business*

25. Plaintiff sells and advertises the Products bearing trademarks validly registered with the United States Patent and Trademark Office, including, *inter alia*, Registration Numbers 1586636; 0576222; 0584323; 5894091; 0620217; and 2495769 (collectively, the "***Trademarks***"), which are identified in the attached **Exhibit A**.

26. Sloan is the owner of the Trademarks and has the right to enforce the Trademarks.

27. Plaintiff has spent considerable resources to develop, market, and protect the Trademarks, which have become a symbol of quality and effectiveness in the industry.

28. Plaintiff actively uses, advertises, markets, and sells all of its Products bearing the Trademarks on the internet and throughout interstate commerce.

29. Plaintiff advertises and sells the Products on its United States website sloan.com (the "***Website***"), through select retailers, on the Amazon Marketplace, and in

traditional brick-and-mortar establishments.

30. Plaintiff also sells to and through certain wholesalers, distributors, and authorized resellers (each, an "***Authorized Reseller***" and collectively, the "***Authorized Resellers***").

31. Plaintiff strives to ensure that consumers of its Products are receiving authentic Products from either Plaintiff itself or one of its reputable Authorized Resellers.

32. Plaintiff promotes its Products through commercial advertisement campaigns and online advertisements.

33. Plaintiff's advertisement and promotional campaigns have resulted in the explosion of popularity in marketplaces with positive consumer reviews for the Products' premier quality.

34. Because of Plaintiff's extensive efforts to develop a premier product and effectively market the Products, consumers now recognize the Trademarks as being associated with Plaintiff's high-quality and reliable Products.

35. As a result of these actions, Plaintiff has become an industry leader in the market, and the Products are synonymous with high-end, top-quality plumbing parts, fixtures, accessories, and related products.

***<u>The Growth of Ecommerce</u>***

36. With the explosion of ecommerce websites, particularly the Amazon Marketplace, there are now great benefits including increased convenience for

manufacturers and consumers.

37. However, with this convenience there are problems and challenges for manufacturers, particularly ensuring that products sold to consumers are genuine and defect-free.

38. Plaintiff and other businesses must ensure that products sold are genuine and defect-free, are handled with all requisite quality controls, and come with all warranties to maintain and continue building their valuable goodwill and reputation.

39. In this ecommerce age, unauthorized resellers can obtain a manufacturer's products from a variety of sources and sell them anonymously online, direct to consumers.

40. Many times, the products sold by unauthorized resellers may be materially different in that they are damaged, expired, sold without warranty, or of an inferior quality.

41. Even if the products are initially genuine, unauthorized resellers may sell products without warranties, that are not handled with requisite quality controls, are of an inferior quality, that are defective, or in violation of a business's rights in its intellectual property.

42. Unauthorized resellers may also sell counterfeit goods as new products, causing more disruption and customer confusion in the marketplace.

43. However, given the nature of ecommerce sales, consumers unknowingly purchase these products believing them to be genuine.

44. Indeed, on the Amazon Marketplace, all sales of a particular product are sold under a single Amazon Standard Identification Number ("***ASIN***"), so consumers face an even more significant challenge trying to determine whether a product is coming from an Authorized Reseller offering genuine products or from an unauthorized reseller offering an inferior version of such products.

45. This is precisely the problem that ecommerce marketplaces create—anonymous third parties sell products to unknowing consumers and such products may be inferior or defective, yet the product listing appears identical to a product sold by a reputable source because Amazon's single ASIN is used by various sellers of the same product.

46. Ultimately, consumers are harmed as they unknowingly buy a materially different, non-genuine product as compared to a legitimate product from the manufacturer or an Authorized Reseller.

***The Resale Policy***

47. At least since September of 2023, all Authorized Resellers have been notified and agreed to abide by Plaintiff's eCommerce Reseller Policy (the "***Resale Policy***"). The Resale Policy is attached as **Exhibit B**.

48. Authorized Resellers must sell Products in accordance with the Resale Policy.

49. Plaintiff uses the Resale Policy to: (i) protect its customers by ensuring the quality of its Products, their presentation, and the associated services meet certain standards; (ii) protect its Authorized Resellers by promoting fair competition between Authorized Resellers; and (iii) protect its brand, its goodwill, and its valuable intellectual property, including its images, designs, content, and the Trademarks.

## ***Quality Controls***

50. Under the Resale Policy, Authorized Resellers must, *inter alia*: (1) comply with any instructions provided by Plaintiff regarding the handling, storage, transport, disposal, or other logistical aspects of the Products; (2) maintain and sell Products in their original packaging without alteration unless previously approved by Plaintiff; and (3) have sufficient knowledge of the Products to be able to educate customers on the proper and safe use of them, as well as any applicable warranties.

51. The Resale Policy requires Authorized Resellers to abide by certain quality controls related to the origins, packaging, storing, and shipping of the Products they sell to ensure customers are protected.

52. Authorized Resellers must comply with relevant material handling protocols per the Resale Policy.

53. Authorized Resellers must also purchase the Products only from Plaintiff or its authorized distributors to ensure the Products sold under its Trademarks were in fact manufactured by Plaintiff.

54. Authorized Resellers must operate under the legal or registered trade name on file with Plaintiff and provide their name, mailing address, email address, and telephone contact information to Plaintiff as well as on the website on which the Products are sold and must include the same with any shipment of Products from the website.

55. Authorized Resellers are limited as to the use of Plaintiff's warranty and may only extend to any end use of the Product in accordance with its terms and without modification, alteration, or presented in any misleading manner.

56. Authorized Resellers are required to abide by Plaintiff's brand guidelines covering the use of any and all intellectual property owned by Plaintiff.

57. Because none of these foregoing protections (collectively referred to as the "***Quality Controls***") are assured when a customer purchases from an unauthorized seller, Plaintiff strongly encourages its customers to purchase through Plaintiff's approved channels to ensure customers receive genuine, defect free products.

***Warranty Protection***

58. Plaintiff offers an industry leading warranty to consumers who purchase the Products from Authorized Resellers. Plaintiff's Warranty Policy is publicly available to consumers at https://legal.sloan.com/warranty-policy.html (the "***Warranty Policy***",

and coverage under it, the "***Warranty***"), and it specifically limits coverage to Products purchased through Authorized Resellers.

59. Specifically, the Warranty Policy sets forth that:

> Sloan only permits distribution and resale of Sloan Products through authorized resellers, such as plumbing distributors and plumbing supply wholesalers. Except as otherwise may be required by applicable law, this Limited Warranty is void unless you purchased the Sloan Product from an authorized reseller.

60. The Resale Policy also makes clear that the sale of Products on the Amazon Marketplace is strictly prohibited.

61. Accordingly, Products sold by Defendants on the Amazon Marketplace or other websites and ecommerce channels do not come with the Warranty, as such sales violate the Resale Policy preventing the sale from being by an Authorized Reseller and therefore lack coverage under the Warranty Policy.

***Authorized Reseller Protections***

62. In addition to protecting customers, the Resale Policy is designed to encourage fair competition between Authorized Resellers and ensure that becoming an Authorized Reseller is a worthwhile venture.

63. By requiring sellers to abide by the Resale Policy and Quality Controls, it ensures a level playing field for all Authorized Resellers.

64. Legitimate and fair competition is good for Plaintiff's customers and Plaintiff's Authorized Resellers.

***Brand Protections***

65. The Resale Policy limits resellers' use of the Trademarks to avoid brand dilution, tarnishment, and confusion as to the origin of the Products.

66. Specifically, the Resale Policy provides that:

> Sloan, its affiliates, or its licensors own all proprietary rights in and to the Sloan and affiliated brands, names, logos, trademarks, service marks, trade dress, copyrights, images, and other intellectual property related to the Products (the "Sloan IP"). You must cease any use of the Sloan IP upon suspension or termination of your status as an Authorized Reseller. Your use of the Sloan IP must be in accordance with any brand guidelines Sloan may provide from time to time, and must be commercially reasonable as to the size, placement, and other manners of use. Sloan reserves the right to review and approve, in its sole discretion, your use or intended use of the Sloan IP at any time, without limitation. Unless expressly approved in writing by Sloan, you may not create, register, or use any domain name or any mobile application that contains any Sloan product name or any trademark owned by or licensed to Sloan, nor a misspelling or confusingly similar variation of any Sloan product name or any trademark owned by or licensed to Sloan.

67. Plaintiff takes these steps to protect its reputation and goodwill that it has spent considerable time and effort establishing, building, and maintaining.

68. Plaintiff has invested significant time, effort, and resources to ensure that the consuming public has a positive perception of Plaintiff and Plaintiff's Products.

69. Plaintiff's reputation and goodwill is a valuable resource, and one which Plaintiff is careful to protect.

70. In order to protect Plaintiff's reputation and goodwill it publishes brand guidelines, for all Authorized Resellers to follow regarding use of any Sloan intellectual property, or advertising of any Sloan Products. *See* **Exhibit C**, "***Brand Guidelines***".

71. Resellers who provide materially altered and inferior Products harm Plaintiff's reputation and goodwill because the failings of such Products are associated with Plaintiff, not with the resellers.

72. Plaintiff has implemented these measures to preserve brand integrity, maintain the high quality of the Products, and ensure customers are receiving genuine, defect-free products.

73. When sellers fail to abide by these requirements, it poses risks to customers and damages the goodwill and reputation of Plaintiff.

***Defendants' Scheme to Sell the Products Without Plaintiff's Consent, Without the Warranty, and Without Abiding by the Resale Policy***

74. At least since September 2024, Plaintiff has been aware of Defendants' sale of materially different Products bearing the Trademarks without authorization, without Plaintiff's consent, and in violation of the Resale Policy.

75. Defendant Flex Panther sold and/or sells the Products on the Amazon Marketplace through the Flex Panther Storefront and possibly other websites without Plaintiff's authorization. *See* **Exhibit D.1**.

76. Defendant White directly or indirectly owns and operates Flex Panther and sold and/or sells the Products on the Amazon Marketplace through the Flex Panther Storefront and possibly other websites without Plaintiff's authorization. *See* **Exhibit D.2**.

77. Defendant White shares the same address as the Amazon storefront.

78. Plaintiff understands that Defendants work in concert with one another to purchase the Products, store the Products, and unlawfully resell the Products, without Plaintiff's authorization or consent.

79. Because Defendants are unauthorized resellers of the Products, Plaintiff cannot verify that Defendants abide by the Quality Controls.

80. Plaintiff understands that Defendants do not offer the same level of customer service as Plaintiff or its Authorized Resellers, and Defendants do not abide by the Quality Controls.

81. Improperly handled products could be damaged, be subjected to adverse conditions, or experience other unexpected issues.

82. Per the terms of the Resale Policy, Defendants are prohibited from selling on the Amazon Marketplace.

83. Because Plaintiff cannot verify that Defendants abide by the Quality Controls and Defendants are not authorized to sell on the Amazon Marketplace, Defendants cannot offer the Warranty.

84. Amazon's *Marketplace Items Condition Guidelines* require that any product that is listed as "New" comes with the "Original manufacturer's warranty, if any." *See* AMAZON.COM, INC., *Marketplace Items Condition Guidelines,* https://www.amazon.com/gp/help/customer/display.html?nodeId=201889720 (Last visited: September 16, 2026).

85. Defendants list the Products for sale as "New" under the Product's unique ASIN, but the Products do not come with the Warranty, which, *inter alia*, violates Amazon's policy.

86. These issues mean that customers are not getting what they expect or what they pay for.

87. Instead, customers are receiving altered products that are materially different, which may substantially impact the customer's experience with the Products and therefore, with Plaintiff's brand.

88. As a result, the Products sold by Defendants are non-genuine Products and such Products are inferior to Products sold by Authorized Resellers, as they do not come with the Warranty or the same suite of services as Products sold by Authorized Resellers.

89. Additionally, Products sold by Defendants do not appear to be handled with the same Quality Controls as Products sold by Authorized Resellers, which may result in customers purchasing tainted, damaged, broken, incorrect, or otherwise defective Products.

90. By selling non-genuine and inferior Products, Defendants are harming consumers and are infringing on Plaintiff's rights in and to the Trademarks.

91. The sale of non-genuine and inferior Products has tarnished and diluted the goodwill and distinctive quality of the Trademarks.

***<u>Plaintiff Demands Defendants Cease Selling the Products</u>***

92. Plaintiff sent multiple cease-and-desist letters to Defendants, notifying Defendants of their unauthorized sales and violations of Plaintiff's rights in the Trademarks and demanding that Defendants cease sales of the Products.

93. According to the California Secretary of State's records and other public sources including as shown on the Amazon Marketplace, Flex Panther's address was 58442 Del Mar St., Yucca Valley, California 92284 through approximately April 2025. Thereafter, Flex Panther's address became 24559 Via Las Laderas, Murrieta, California 92562.

94. Plaintiff, through undersigned counsel, sent a cease-and-desist letter (the "***First Flex Panther Letter***") on September 18, 2024, via certified mail requesting Flex Panther cease its infringing sales of the Products. The First Flex Panther Letter is attached as **<u>Exhibit E.1</u>**.

95. The First Flex Panther Letter was delivered on September 23, 2024, to 58442 Del Mar St., Yucca Valley, CA 92284, which was Defendant's address at the time. The First Flex Panther Letter requested that Defendants cease selling Sloan's Products by October 2, 2024.

96. Defendants did not respond to the First Flex Panther Letter and continued their unauthorized sale of the Products.

97. Plaintiff, through undersigned counsel, sent a cease-and-desist letter (the "***Second Flex Panther Letter***") on October 8, 2024, via certified mail requesting Defendants cease their infringing sales of the Products. The Second Flex Panther Letter is attached as **Exhibit E.2**.

98. The Second Flex Panther Letter also informed Flex Panther that their continued sale of Products now amounted to willful trademark infringement.

99. The Second Flex Panther Letter was delivered on October 15, 2024, to 58442 Del Mar St., Yucca Valley, CA 92284, which was Defendant's address at the time.

100. Plaintiff, through undersigned counsel, sent a cease-and-desist letter (the "***Third Flex Panther Letter***") on October 25, 2024, via FedEx requesting Flex Panther cease its infringing sales of the Products. The Third Flex Panther Letter is attached as **Exhibit E.3**.

101. The Third Flex Panther Letter was delivered on October 29, 2024, to 58442 Del Mar St., Yucca Valley, CA 92284, which was Defendant's address of record at the time.

102. In one final attempt to notify Defendants that Sloan takes unauthorized sales of its products seriously, Plaintiff, through undersigned counsel, sent another cease-and-desist letter (the "***Final Flex Panther Letter***") on September 2, 2026, via FedEx (together with the First Flex Panther Letter, the Second Flex Panther Letter, and the Third Flex Panther Letter, the "***Letters***"), placing Flex Panther on notice that Sloan previously pursued litigation against other unauthorized resellers for infringement of its intellectual property rights, including in *Sloan Valve Co. v. ZRM Industries, et al.*, Case No. 1:25-cv-06289 (N.D. Ill. 2025). The Final Flex Panther Letter is attached as **Exhibit E.4**.

103. The Final Flex Panther Letter was delivered on September 4, 2026, to both Flex Panther's prior address, 58442 Del Mar St., Yucca Valley, CA 92284, and Defendants' current address, 24559 Via Las Laderas, Murrieta, CA 92562, as identified in the California Secretary of State's records and other public sources including the Amazon Marketplace.

104. Defendants failed to respond to the Letters.

105. Instead, Defendants ignored the Letters and continued to sell the Products thereby confusing and misleading the consuming public.

106. Specifically, Defendants continued selling the Products without authorization after receipt of the First Flex Panther Letter, after receipt of the Second Flex Panther Letter, and after receipt of the Third Flex Panther Letter, each of which expressly notified Defendants that their conduct constituted willful trademark infringement.

107. Defendants continued their unauthorized sales after receipt of the Final Flex Panther Letter, which placed Defendants on express notice that Sloan had previously pursued and resolved litigation against other unauthorized resellers for the same conduct, including in *Sloan Valve Co. v. ZRM Industries, et al.*, Case No. 1:25-cv-06289 (N.D. Ill. 2025). As of the date of this filing, Defendants have not agreed to cease and desist from selling the Products and infringing upon Plaintiff's rights in the Trademarks, and instead, Defendants continue to sell the Products.

108. Plaintiff initiated this action after Defendants ignored Plaintiff's requests.

## Claim One
## Declaratory Judgment/Injunctive Relief

109. Plaintiff incorporates each and every preceding paragraph as if fully restated herein.

110. An actual and justiciable controversy exists between Plaintiff and Defendants related to whether Defendants have the right to sell the Products without Plaintiff's consent and in violation of Plaintiff's rights in the Trademarks.

111. The Court, pursuant to 735 ILCS 5/2-701 and Fed. R. Civ. P. 57, should declare that Defendants have no right or authorization to sell the Products or use the

Trademarks, as these actions have harmed and continue to harm Plaintiff in an amount to be determined at trial.

112. The Court should further declare that the Letters gave Defendants actual notice that they were not authorized to use the Trademarks, and any continued use of the Trademarks or unauthorized sales of the Products constitutes willful violations of Plaintiff's rights in the Trademarks.

113. Such a declaration is proper, pursuant to 765 ILCS 1050/6, 765 ILCS 1036/65, and 28 U.S.C. § 2201, because, *inter alia*, the declaration would terminate the actual and justiciable controversy between Plaintiff and Defendants and remove any uncertainty with respect to this issue.

114. Additionally, the Court should enjoin Defendants from any further sales of the Products or use of the Trademarks.

**Claim Two**
**Common Law Unfair Competition**

115. Plaintiff incorporates each and every preceding paragraph as if fully restated herein.

116. Plaintiff is the owner of the Trademarks with the right to enforce its rights therein.

117. Plaintiff transacts business in interstate commerce using the Trademarks by selling the Products throughout the United States.

118. The Trademarks are valid and subsisting marks, in full force and effect, and registered with the United States Patent and Trademark Office.

119. Defendants use the Trademarks in connection with their sale of the Products without Plaintiff's authorization or consent.

120. The Products sold by Defendants bearing the Trademarks are not Products that are purchased and sold in accordance with the Resale Policy.

121. The Products sold by Defendants bearing the Trademarks do not come with Plaintiff's Warranty because Plaintiff's Warranty only attaches to Products sold in accordance with the Resale Policy.

122. Defendants fail to abide by the Resale Policy by, *inter alia*, failing to purchase the Products from Plaintiff directly or its Authorized Resellers, selling the Products without consent of Plaintiff on the Amazon Marketplace, and failing to abide by the Quality Controls. *See* Exh. B.

123. Defendants sold the Products for the purpose of profiting from Plaintiff's brand name and reputation by falsely associating itself with Plaintiff to the consuming public in ecommerce marketplaces, including but not limited to the Amazon Marketplace.

124. Because the Products sold by Defendants do not have the Warranty and are not sold pursuant to the Resale Policy, these Products are not genuine and are materially different from Products sold by Plaintiff or Authorized Resellers.

125. Defendants' actions, including, but not limited to, their unauthorized sale of the Products and their unauthorized use of the Trademarks constitute unfair competition.

126. Defendants' actions have damaged Plaintiff in the form of, *inter alia*, lost sales, lost profits, interference with prospective business relationships, trademark infringement, trademark dilution, tarnishment, and reputational brand value.

127. As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

**Claim Three**
**Trademark Infringement (15 U.S.C. § 1114)**

128. Plaintiff incorporates each and every preceding paragraph as if fully restated herein.

129. Plaintiff is the owner of the Trademarks with the right to enforce its rights therein.

130. Plaintiff transacts business in interstate commerce using the Trademarks by selling the Products throughout the United States.

131. The Trademarks are each a valid and subsisting mark, in full force and effect, and are registered with the United States Patent and Trademark Office.

132. Defendants use the Trademarks in connection with its sale of the Products without Plaintiff's authorization or consent.

133. The Products sold by Defendants bearing the Trademarks do not come with the Warranty, and Plaintiff further understands that Defendants do not abide by the Quality Controls.

134. Defendants further fail to abide by the Resale Policy by, *inter alia*, failing to purchase the Products from Plaintiff directly or its Authorized Resellers, selling the Products without consent of Plaintiff on the Amazon Marketplace, and failing to abide by the Quality Controls. *See* Exh. B.

135. Because the Products sold by Defendants do not have the Warranty and are not handled with the requisite Quality Controls, the Products sold by Defendants are not genuine and are materially different from Products sold by Plaintiff or its Authorized Resellers.

136. Defendants' unauthorized sales of the Products bearing the Trademarks has infringed on, and damages the value of, the Trademarks.

137. Defendants' use of the Trademarks is likely to cause confusion, cause mistake, or deceive customers because it suggests that the Products sold by Defendants come with the Warranty and the same suite of services as Products sold by Plaintiff or Authorized Resellers, when, in fact, the Products sold by Defendants do not.

138. Confusion is more likely given that Defendants list the Products as "New" despite it being a violation of Amazon's Marketplace Items Condition Guidelines to list an item as "New" when it does not come with the manufacturer's warranty as is the case with Defendants' sale of the Products.

139. Confusion is also more likely as a result of the single Amazon ASIN used to sell the Products.

140. Defendants' use of the Trademarks is likely to cause confusion, cause mistake, or deceive customers because it suggests that the Products are sponsored by or authorized for sale by Plaintiff, when, in fact, they are not.

141. Plaintiff informed Defendants that their sales of the Products infringed on Plaintiff's rights in the Trademarks.

142. As a direct and proximate result of Defendants' continued sale of the Products bearing the Trademarks, Plaintiff has suffered and continues to suffer immediate and irreparable harm, including harm to the reputation and goodwill of its business and loss of profits in an amount to be proven at trial.

143. Plaintiff is entitled to recover damages from Defendants' infringement and disgorgement of any profits from Defendants' infringing sales of the Products.

144. Plaintiff is further entitled to injunctive relief pursuant to 15 U.S.C. § 1116 and increased damages pursuant to 15 U.S.C. § 1117(a) because Defendants' infringement of the Trademarks is willful.

**Claim Four**
**Unfair Competition (15 U.S.C. § 1125(a))**

145. Plaintiff incorporates each and every preceding paragraph as if fully restated herein.

146. Plaintiff is the owner of the Trademarks with the right to enforce its rights therein.

147. Plaintiff transacts business in interstate commerce using the Trademarks by selling the Products throughout the United States.

148. The Trademarks are each a valid and subsisting mark, in full force and effect, and registered with the United States Patent and Trademark Office.

149. Defendants use the Trademarks in connection with their sale of the Products without Plaintiff's authorization or consent and despite notice and demand from Plaintiff.

150. The Products sold by Defendants bearing the Trademarks do not come with the Warranty, and Plaintiff understands that Defendants do not abide by the Quality Controls.

151. Because the Products sold by Defendants do not have the Warranty and are not sold in accordance with the Quality Controls, these Products are not genuine and are materially different from Products sold by Plaintiff or Authorized Resellers.

152. Defendants further fail to abide by the Resale Policy by, *inter alia*, failing to purchase the Products from Plaintiff directly or its Authorized Resellers, selling the

Products without consent of Plaintiff on the Amazon Marketplace and failing to abide by the Quality Controls. *See* Exh. B.

153. Confusion is more likely given that Defendants list the Products as "New" despite it being a violation of Amazon's Marketplace Items Condition Guidelines to list an item as "New" when it does not come with the manufacturer's warranty as is the case with Defendants' sale of the Products.

154. Confusion is also more likely given the single Amazon ASIN used to sell the Products.

155. Defendants' use of the Trademarks is likely to cause confusion, cause mistake, or deceive customers because it suggests that the Products are sponsored by or authorized for sale by Plaintiff, when, in fact, they are not.

156. Defendants sold Plaintiff's Products for the purpose of profiting from Plaintiff's brand name and reputation by falsely associating itself with Plaintiff to the consuming public in ecommerce marketplaces, including but not limited to the Amazon Marketplace.

157. Defendants' unauthorized sale of the Products bearing the Trademarks has infringed on and damages the value of the Trademarks.

158. Plaintiff informed Defendants that their sale of the Products infringed on Plaintiff's rights in the Trademarks.

159. As a direct and proximate result of Defendants' continued sale of the Products bearing the Trademarks, Plaintiff has suffered and continues to suffer immediate and irreparable harm, including harm to the reputation and goodwill of its business and loss of profits in an amount to be proven at trial.

160. Plaintiff is entitled to recover damages from Defendants' unfair competition in their use of the Trademarks and sale of the Products without Plaintiff's authorization or consent.

161. Plaintiff is further entitled to injunctive relief pursuant to 15 U.S.C. § 1116 and increased damages pursuant to 15 U.S.C. § 1117(a).

**Claim Five**
**Trademark Dilution (15 U.S.C. § 1125(c))**

162. Plaintiff incorporates each and every preceding paragraph as if fully restated herein.

163. Plaintiff is the owner of the Trademarks with the right to enforce its rights therein.

164. Plaintiff transacts business in interstate commerce using the Trademarks by selling the Products throughout the United States.

165. The Trademarks are each a valid and subsisting mark, in full force and effect, and registered with the United States Patent and Trademark Office.

166. Plaintiff has continuously used the Trademarks in commerce and has spent considerable sums in time and money to promote and advertise its Products using the Trademarks.

167. As a result, the Trademarks have become famous as consumers have come to associate the Trademarks with high-quality plumbing parts and Plaintiff.

168. Plaintiff sells the Products bearing the Trademarks throughout the United States.

169. Defendants are using the Trademarks in connection with the sale of the Products.

170. However, the Products sold by Defendants are materially different than genuine Products sold by Plaintiff because Defendants' products do not come with the Warranty and upon information and belief, are not sold in accordance with the Quality Controls.

171. Because Defendants are selling an inferior product, Defendants' use of the Trademarks is causing the dilution of the Trademarks by blurring and tarnishing the reputation and goodwill associated with the Trademarks in violation of 15 U.S.C. § 1125(c).

172. As a direct and proximate result of Defendants' continued sale of the Products bearing the Trademarks, Plaintiff has suffered and continues to suffer immediate and irreparable harm, including harm to the reputation and goodwill of its business and loss of profits in an amount to be proven at trial.

173. Plaintiff is entitled to recover damages from Defendants' infringement of the Trademarks, dilution and tarnishment of the Trademarks and Plaintiff's brand, and disgorgement of any profits from Defendants' infringing sales of the Products.

174. Plaintiff is further entitled to injunctive relief pursuant to 15 U.S.C. § 1116 and increased damages pursuant to 15 U.S.C. § 1117(a) because Defendants' infringement of the Trademarks is willful.

**Claim Six**
**False Advertising (15 U.S.C. § 1125(a)(1)(B))**

175. Plaintiff incorporates each and every preceding paragraph as if fully restated herein.

176. Plaintiff is the owner of the Trademarks with the right to enforce its rights therein.

177. Plaintiff transacts business in interstate commerce using the Trademarks by selling the Products throughout the United States.

178. The Trademarks are each a valid and subsisting trademarks in full force and effect.

179. Through the Defendants' storefronts on the Amazon Marketplace, Defendants have willfully and knowingly used, and continue to use, the Trademarks in interstate commerce for purposes of advertising, promoting, and selling the Products without Plaintiff's consent.

180. Defendants' advertisements and promotions of the Products unlawfully using the Trademarks have been disseminated throughout commerce to consumers across the country.

181. Defendants have used, and continue to use, the Trademarks to falsely advertise that the Products Defendants sell come with the Warranty.

182. Such advertisement is false because the Warranty does not come with the Products sold by Defendants.

183. Products purchased from Plaintiff and its Authorized Resellers come with the Warranty.

184. Plaintiff cannot ensure the source, legitimacy, or quality of products sold by unauthorized resellers such as Defendants.

185. Therefore, products sold by unauthorized resellers like Defendants do not come with the Warranty.

186. Indeed, Amazon implicitly notifies consumers that products listed as "New" for sale on the Amazon Marketplace come with a manufacturer's warranty.

187. Products listed on the Amazon Marketplace as "New" must come with any warranty offered by the manufacturer.

188. Defendants list the Products as "New" on their storefronts on the Amazon Marketplace.

189. Such representation is false because the Products sold by Defendants do not come with the Warranty.

190. Defendants' use of the Trademarks in connection with the unauthorized advertising, promotion, and sale of Products bearing the Trademarks misrepresents the nature, characteristics, qualities, and origin of Defendants' Products because it suggests that the Products come with the Warranty when, in fact, they do not.

191. Defendants' use of the Trademarks in connection with the unauthorized advertising, promotion, and sale of Products bearing the Trademarks is likely to cause confusion, cause mistake, or deceive because it falsely suggests that the Products Defendants offer for sale are genuine and authentic Products that come with the Warranty, when in fact they do not.

192. Defendants' unauthorized and deceptive use of the Trademarks is material and likely to influence customers to purchase the Products they sell, as consumers are likely to believe that Products Defendants advertise using the Trademarks are genuine Products that come with the Warranty when, in fact, they do not and Defendants cannot offer the Warranty.

193. Defendants' unauthorized use of the Trademarks in advertising and sale of the Products without Plaintiff's consent infringes on the Trademarks.

194. As a proximate result of Defendants' actions, Plaintiff has suffered, and will continue to suffer damage to its business, goodwill, reputation, and profits in an amount to be determined at trial.

195. Plaintiff is entitled to recover its damages caused by Defendants' false advertisement of the Products on the Amazon Marketplace and disgorgement of Defendants' profits from their willfully infringing sales and unjust enrichment.

196. Plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' infringement, and unless Defendants are permanently enjoined, Plaintiff will continue to suffer.

197. Plaintiff is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Trademarks.

**Claim Seven**
**Civil Conspiracy**

198. Plaintiff incorporates each and every preceding paragraph as if fully restated herein.

199. Defendants have entered into a malicious combination in a way not competent for one alone by acting in concert with one another to, *inter alia*, purchase, market, and sell Plaintiff's Products without Plaintiff's authorization to the detriment of the consuming public.

200. Defendants have harmed Plaintiff by, *inter alia*: (i) infringing upon Plaintiff's valuable intellectual property, including the Trademarks; (ii) tarnishing and diluting the Trademarks; (iii) harming Plaintiff's brand, goodwill, and reputation by offering materially different products and associating themselves with Plaintiff; and (iv) falsely advertising the Products as "New" on the Amazon Marketplace when Defendants cannot offer the Warranty to consumers.

201. As a direct and proximate result of Defendants' unlawful acts, Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

**Claim Eight**
**Common Law Trademark Infringement**

202. Plaintiff incorporates each and every preceding paragraph as if fully restated herein.

203. Plaintiff is the owner of the Trademarks with the right to enforce its rights therein.

204. Plaintiff transacts business in interstate commerce using the Trademarks by selling the Products throughout the United States.

205. The Trademarks are each a valid and subsisting mark, in full force and effect, and are registered with the United States Patent and Trademark Office.

206. Defendants use the Trademarks in connection with its sale of the Products without Plaintiff's authorization or consent.

207. The Products sold by Defendants bearing the Trademarks do not come with the Warranty, and Plaintiff further understands that Defendants do not abide by the Quality Controls.

208. Defendants further fail to abide by the Resale Policy by, *inter alia*, failing to purchase the Products from Plaintiff directly or its Authorized Resellers, selling the Products without consent of Plaintiff on the Amazon Marketplace, and failing to abide by the Quality Controls. *See* Exh. B.

209. Because the Products sold by Defendants do not have the Warranty and are not handled with the requisite Quality Controls, the Products sold by Defendants are not genuine and are materially different from Products sold by Plaintiff or its Authorized Resellers.

210. Defendants' unauthorized sales of the Products bearing the Trademarks has infringed on, and damages the value of, the Trademarks.

211. Defendants' use of the Trademarks is likely to cause confusion, cause mistake, or deceive customers because it suggests that the Products sold by Defendants come with the Warranty and the same suite of services as Products sold by Plaintiff or Authorized Resellers, when, in fact, the Products sold by Defendants do not.

212. Confusion is more likely given that Defendants list the Products as "New" despite it being a violation of Amazon's Marketplace Items Condition Guidelines to list an item as "New" when it does not come with the manufacturer's warranty as is the case with Defendants' sale of the Products.

213. Confusion is also more likely as a result of the single Amazon ASIN used to sell the Products.

214. Defendants' use of the Trademarks is likely to cause confusion, cause mistake, or deceive customers because it suggests that the Products are sponsored by or authorized for sale by Plaintiff, when, in fact, they are not.

215. Plaintiff informed Defendants that their sales of the Products infringed on Plaintiff's rights in the Trademarks.

216. As a direct and proximate result of Defendants' continued sale of the Products bearing the Trademarks, Plaintiff has suffered and continues to suffer immediate and irreparable harm, including harm to the reputation and goodwill of its business and loss of profits in an amount to be proven at trial.

217. Plaintiff is entitled to recover damages from Defendants' infringement and disgorgement of any profits from Defendants' infringing sales of the Products.

218. Plaintiff is further entitled to injunctive relief pursuant to Illinois Trademark Registration and Protection Act 765 ILCS 1036/70 and increased damages pursuant to 765 ILCS 1036/70 because Defendants' infringement of the Trademarks is willful.

## Claim Nine
## Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510

219. Plaintiff incorporates each and every preceding paragraph as if fully restated herein.

220. Defendants willfully engaged in deceptive trade practices by, *inter alia*, creating the notion and confusing consumers as to the affiliation between Defendants and Plaintiff.

221. Defendants' unauthorized use of the Trademarks is willful, misleading and likely to cause confusion as to the source of the infringing Products in violation of 815 ILCS 510/2.

222. Defendants' unauthorized use of the Trademarks creates the misperception that Defendants and Plaintiff are affiliated, which violates 815 ILCS 510/2.

223. As a result, Plaintiff has suffered damages and will continue to suffer damages in an amount to be proven at trial.

224. Plaintiff is further entitled to injunctive relief pursuant to 815 ILCS 510/3 and costs pursuant to 815 ILCS 510/3 as the Defendants' actions are willful.

**Claim Ten**
**Piercing the Corporate Veil**

225. Plaintiff incorporates each and every preceding paragraph as if fully restated herein.

226. At all relevant times, there has been a unity of interest and ownership that the separate personalities of Defendants ceased to exist.

227. Plaintiff understands that Defendants work in concert with one another to purchase the Products, store the Products, and unlawfully resell the Products, without Plaintiff's authorization or consent.

228. Defendants use Flex Panther as their alter ego and abuse the formalities to advance their own personal interests.

229. Defendants have perpetrated a fraud, injustice, or the like by confusing and misleading consumers into believing they are purchasing new Products, from different entities, when in fact Flex Panther is operated and owned directly or indirectly by White.

230. Adherence to the fiction of the separate existence between White and Flex Panther would promote injustice because it would permit White to limit liability exclusively to Flex Panther and prohibit Plaintiff from recovering damages resulting from their conduct.

231. As a result, Plaintiff is entitled to pierce the corporate veil as to White, in his capacity as the owner of Flex Panther, and accordingly hold him personally liable for damages to Plaintiff.

**WHEREFORE,** Plaintiff prays for judgment as follows:

A. As to Claim One, a declaratory judgment stating that Defendants are not authorized to sell the Products and a judgment entry permanently enjoining Defendants from any further sales of the Products and using Plaintiff's intellectual property;

B. As to Claim Two, award compensatory damages in an amount to be determined at trial, as well as attorneys' fees and costs, disgorge Defendants of their profits from the unauthorized sales of the Products, and permanently enjoin Defendants from any further sales of the Products and using Plaintiff's intellectual property;

C. As to Claim Three, award compensatory damages in an amount to be determined at trial, as well as attorneys' fees and costs, disgorge Defendants of their profits from the unauthorized sales of the Products, and permanently enjoin Defendants from any further sales of the Products and using Plaintiff's intellectual property;

D. As to Claim Four, award compensatory damages in an amount to be determined at trial, as well as attorneys' fees and costs, disgorge Defendants of their profits from the unauthorized sales of the Products, and permanently enjoin Defendants from using Plaintiff's intellectual property, including the Trademarks, and selling the Products;

E. As to Claim Five, award compensatory damages in an amount to be determined at trial, as well as attorneys' fees and costs, disgorge Defendants of their profits from the unauthorized sales of the Products, and permanently enjoin Defendants from using Plaintiff's intellectual property, including the Trademarks, and selling the Products;

F. As to Claim Six, award compensatory damages in an amount to be determined at trial, as well as attorneys' fees and costs, disgorge Defendants of their profits from all unauthorized sales of the Products, and permanently enjoin Defendants from using Plaintiff's intellectual property, including the Trademarks, and selling the Products;

G. As to Claim Seven, award compensatory damages in an amount to be determined at trial, as well as attorneys' fees and costs, and permanently enjoin Defendants from using Plaintiff's intellectual property, including the Trademarks, and selling the Products;

H. As to Claim Eight, award compensatory damages in an amount to be determined at trial, as well as attorneys' fees and costs, and permanently enjoin Defendants from using Plaintiff's intellectual property, including the Trademarks, and selling the Products;

I. As to Claim Nine, award compensatory damages in an amount to be determined at trial, as well as attorneys' fees and costs, and permanently enjoin

Defendants from using Plaintiff's intellectual property, including the Trademarks, and selling the Products;

J. As to Claim Ten, pierce the corporate veil, award compensatory damages in an amount to be determined at trial, as well as attorneys' fees and costs and permanently enjoin Defendants from selling the Products and using Plaintiff's intellectual property, including the Trademarks; and

K. All other relief that this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**GOLDBERG KOHN LTD.**

*/s/ Michael L. Sullivan*
MICHAEL L. SULLIVAN (6207822)
JON E. KLINGHOFFER (6270082)
55 E. Monroe Street, Suite 3300
Chicago, IL 60603
Phone: 312-201-4000
Email: michael.sullivan@goldbergkohn.com

*Local Counsel for Plaintiff Sloan Valve Company*

**KOHRMAN JACKSON & KRANTZ LLP**

*/s/ Jonathon W. Groza*
JONATHON W. GROZA (OH 0083985)
KYLE D. STROUP (OH 0099118)
ANTONIO F. DEMPSEY (OH 0101394)
*(applications for pro hac vice forthcoming)*
One Cleveland Center, 29th Floor
1375 East Ninth Street
Cleveland, OH 44114
Phone: 216-696-8700
Email: jwg@kjk.com; kds@kjk.com; afd@kjk.com

*Counsel for Plaintiff Sloan Valve Company*